UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
_____

HEATHER ROBINS, JILL CLARK,
and GREGORY WERSAL,

       Plaintiffs,

v.                               **MEMORANDUM OF LAW & ORDER**
                                      Civil File No. 10-2073 (MJD/SRN)

MARK RITCHIE, in his official
capacity as Minnesota Secretary
of State (and/or his successor),
TIMOTHY PAWLENTY, in his
official capacity as Governor of
the State of Minnesota (and/or his
successor), and JOHN DOES 1-300,

       Defendants.
_____

Jill Clark, Jill Clark, PA, Counsel for Plaintiffs.

Alan I. Gilbert, Solicitor General for the State of Minnesota, and Kenneth E. Raschke, Jr., Minnesota Attorney General's Office, Counsel for Defendants.
_____

## I. INTRODUCTION

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction and/or Writ of Mandamus. [Docket No. 2] The Court heard oral

argument on June 21, 2010.

## II. BACKGROUND

### A. The Parties and General Theory of the Case

Plaintiffs are Heather Robins, Jill Clark, and Gregory Wersal. Defendants are current Minnesota Governor Timothy Pawlenty and current Minnesota Secretary of State Mark Ritchie.

Robins is a Minnesota resident and is eligible to vote in Minnesota elections. Robins argues that she would like to vote for judges and asserts that the provision of the Minnesota Constitution and various Minnesota statutes, as set forth in the Complaint, have prevented her from doing so.

Wersal is a Minnesota resident and a licensed attorney in the State of Minnesota. He intends to for file for candidacy for the Chief Justice seat on the Minnesota Supreme Court.

Clark is a Minnesota resident and licensed attorney. Clark also intends to file for candidacy for the Minnesota Chief Justice seat in 2010.

Minnesota Secretary of State Ritchie prepares the sample ballot and posts which seats are vacant and can be filed for by candidates. Clark v. Pawlenty, 755 N.W.2d 293, 299 (Minn. 2008) ("Clark I"). Governor Pawlenty appoints the Chief

Justice when a vacancy occurs.

Generally, Plaintiffs allege that, as to Minnesota judicial seats, there is a systematic use of the "resignation/appointment/delayed election (or never election) which achieves the result of changing the language of the Minnesota Constitution (Art. VI, Section [8]) which mandates elections, and results in a de facto appointment process." (Pls.' Brief in Support at 13.)

B.  Clark I

On August 14, 2008, Plaintiffs Clark and Robins (represented by Clark) filed a petition in the Minnesota Supreme Court under Minnesota Statute § 204B.44. The respondents included Governor Pawlenty and Secretary of State Ritchie, in their official capacities. In the petition, Clark and Robins sought to strike Associate Minnesota Supreme Court Justice Lorie Skjerven Gildea's name from the 2008 general election ballot on the grounds that "a judge appointed by the governor to fill a judicial vacancy is barred from running for election to retain the office." Clark I, 755 N.W.2d at 298. In the alternative, Clark and Robins challenged the constitutionality of Minnesota Statute § 204B.36, subdivision 5, which states that, in judicial elections, the incumbent judge or justice is designated as the "incumbent" on the ballot. Clark I, 755 N.W.2d at 298.

The Minnesota Supreme Court denied the petition in its entirety. Clark I, at 314. Among other things, the court explicitly found that, as to the incumbency designation statute, "petitioners have not established any violation of their First Amendment rights." Id. at 314. The court reasoned that, even if the incumbent designation did unfairly advantage the incumbent candidate, which the plaintiffs had wholly failed to factually support, "the asserted injury cannot be characterized as severe." Id. at 312. The court concluded that "[t]he purpose of the incumbent designation – to inform the voters – is sufficient to justify the minimal intrusion, if any, on petitioners' First Amendment rights." Id. at 314.

Clark and Robins petitioned the U.S. Supreme Court for a writ of certiorari, which the U.S. Supreme Court denied. Clark v. Pawlenty, 129 S. Ct. 2056 (2009).

### C. Clark II

On March 11, 2010, Minnesota Supreme Court Chief Justice Eric Magnuson announced his resignation, effective June 30, 2010. On March 12, Governor Pawlenty notified Secretary of State Ritchie of the upcoming vacancy, and, on March 31, Pawlenty notified Ritchie of his intention to fill the vacancy by appointment, pursuant to Article VI, § 8 of the Minnesota Constitution. Article VI, § 8 of the Minnesota Constitution provides:

4

> Whenever there is a vacancy in the office of judge the governor shall appoint in the manner provided by law a qualified person to fill the vacancy until a successor is elected and qualified. The successor shall be elected for a six year term at the next general election occurring more than one year after the appointment.

On March 16, 2010, Clark, Robins, and Wersal (all represented by Clark) filed a petition in the Minnesota Supreme Court, again under Minnesota Statute § 204B.44, and again naming Pawlenty and Ritchie in their official capacities as the respondents. Clark v. Ritchie, – N.W.2d –, 2010 WL 1904554, at *1-*2 (Minn. May 13, 2010) ("Clark II"). The petitioners sought to bar the Governor from appointing anyone to fill the vacancy in the office of Chief Justice and to require the Secretary of State to post the office of Chief Justice for election in November 2010 and to accept filings of affidavits of candidacy for that office. Clark II, at *1-*2.

The petitioners asserted that there had been an excessive use of the appointment process for filling judicial vacancies and claimed that the Minnesota Constitution required that an election for the office of Chief Justice be held in 2010. Id. at *3. They further asserted that Ritchie's failure to accept filings for that election violated their rights under the First Amendment of the U.S. Constitution to run for that office and to vote for that office. Id. at *8.

On May 13, 2010, the Minnesota Supreme Court denied the petition. Clark II, at *9. The court held that Article VI, § 8 of the Minnesota Constitution unambiguously required the Governor "to fill by appointment all judicial vacancies, created by any cause. And because we conclude that Section 8 applies to all vacancies, we further conclude that the reason for a judge's retirement or resignation from the bench is not relevant under Article VI, Section 8." Clark II, at *5. The court noted that it has "expressly rejected the argument" that the Minnesota Constitution prefers that judges be selected by election rather than by gubernatorial appointment. Id. at *4. It concluded:

> The office of chief justice will be vacant as of June 30, 2010, and under the plain language of Article VI, Section 8, the Governor is constitutionally obligated to fill that vacancy by appointment. The person appointed as chief justice fills the vacancy created by the resignation of Chief Justice Magnuson, and Section 8 provides for election of a successor at the next general election more than one year after his or her appointment, that is, in November 2012. In these circumstances, the Secretary of State is not authorized under state law to post the chief justice seat for the November 2010 general election.

Id. at *8.

As for the petitioners' U.S. constitutional challenge, the court held it had "no merit" because "Petitioners cite no case, and we can find none, holding that

6

the First Amendment creates a right to run or to vote for state office if state law does not provide for an election to be held." Id. at * 8.

The Minnesota Supreme Court concluded:

[B]ecause state law does not require an election for the chief justice seat in November 2010, the failure to put the chief justice seat on the November 2010 ballot does not violate the First Amendment, either with respect to petitioners' rights to vote or the rights of petitioners Clark and Wersal to run for public office.

Id. at *9. The Judgment in Clark II was filed on June 8, 2010. The petitioners have 90 days from the entry of judgment to file a petition for writ of certiorari to the U.S. Supreme Court. S. Ct. R. 13.1.

On May 13, 2010, Pawlenty appointed Associate Minnesota Supreme Court Justice Gildea to the office of Chief Justice, effective July 1, 2010. Also on May 13, Pawlenty appointed Davis R. Stras to the Minnesota Supreme Court Associate Justice position to be vacated by Gildea, effective July 1, 2010.

**D.     The Current Lawsuit**

On May 17, 2010, Clark, Robins, and Wersal (represented by Clark), filed a Complaint in this Court against Ritchie and Pawlenty in their official capacities. On May 21, they served Defendants with the Complaint.

The Complaint alleges that Plaintiffs' right to vote and/or to run for office

7

is violated by 1) Article VI, Section 8 of the Minnesota Constitution, both on its face and as applied; 2) the Minnesota incumbency statute for judicial officers, Minnesota Statute § 204B.36, subdivision 5[1], on its face and as applied; 3) the over-creation of judicial vacancies coupled with the over-use of appointments; and 4) the mandatory retirement statute, Minnesota Statute § 490.125. Count I of the one-count Complaint asserts Violation of 42 U.S.C. § 1983, because the laws and conduct listed in 1)-4) violate the Fourteenth Amendment of the U.S. Constitution in conjunction with the First Amendment right to run for public office and to vote for a candidate; with the right to equal protection in voting and the quality of voting; and with the Fourteenth Amendment right to vote and to representation.

On May 21, 2010, Plaintiffs filed a Motion for Preliminary Injunction and/or Writ of Mandamus. [Docket No. 2] They seek "expedited relief only on two (2) portions of their complaint:" the constitutionality of Article VI, Section 8

---

[1] In the Complaint, Plaintiffs cite to Minnesota Statute § 204B.35, subdivision 2, which generally addresses how candidates' names appear on the ballot. Section 204B.36, subdivision 5, is the citation for the Minnesota Statute that states: "If a chief justice, associate justice, or judge is a candidate to succeed again, the word 'incumbent' shall be printed after that judge's name as a candidate."

of the Minnesota Constitution and the constitutionality of the incumbency designation statute. (Pls.' Brief in Support at 1.) Specifically, Plaintiffs request an order finding Section 8 unconstitutional on its face or as applied to the 2010 election for Chief Justice; a preliminary injunction restraining Ritchie from enforcing Section 8 and thereby ordering him to open the Chief Justice seat for filing and place names on the ballot; alternatively, a writ of mandamus ordering Ritchie to open the seat for filing; a preliminary injunction restraining the Governor from appointing anyone to fill judicial vacancies except to fill them until the next election which occurs more than 30 days from the judge leaving office; and an order finding the incumbency designation to be unconstitutional as applied to the 2010 race for Chief Justice. (Pls.' Brief in Support at 47-49.)

### III. DISCUSSION

#### A. Subject Matter Jurisdiction: <u>Rooker-Feldman</u> Doctrine

Defendants argue that this Court does not have subject matter jurisdiction over Plaintiffs' Complaint because the Complaint is barred by the <u>Rooker-Feldman</u> doctrine. The parties will fully brief this issue for a motion to dismiss to be heard in September 2010.

The <u>Rooker-Feldman</u> doctrine "is confined to cases . . . brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). Judgment in Clark II was entered on June 8, 2010, after this case was filed; however, Defendants claim that the Clark II opinion constituted a "judgment" for the purposes of Rooker-Feldman. The parties' briefing on the motion to dismiss will likely address the question of whether this proceeding was commenced after judgment was entered in Clark II. The Court need not decide the Rooker-Feldman question at this point, before briefing on the issue is complete, because it is clear that, even if the Court does have jurisdiction, a preliminary injunction will not issue because it is highly likely that Plaintiffs' claims are barred by res judicata.

### B. Preliminary Injunction

#### 1. Legal Standard for a Preliminary Injunction

The Eighth Circuit Court of Appeals has established the standard for considering preliminary injunctions. Dataphase Sys. Inc. v. CL Sys., Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc ). This Court must consider (1) the threat of irreparable harm to the moving party if an injunction is not granted, (2) the harm

suffered by the moving party if injunctive relief is denied as compared to the effect on the non-moving party if the relief is granted, (3) the public interest, and (4) the probability that the moving party will succeed on the merits.  Id.

Recently, the Eighth Circuit, sitting en banc, clarified that a plaintiff must demonstrate a likelihood of success on the merits as a threshold requirement for issuance of preliminary injunction enjoining a state statute:

> We now . . . clarify that a party seeking a preliminary injunction of the implementation of a state statute must demonstrate more than just a "fair chance" that it will succeed on the merits.  We characterize this more rigorous standard, drawn from the traditional test's requirement for showing a likelihood of success on the merits, as requiring a showing that the movant is likely to prevail on the merits.  [A] more rigorous standard reflects the idea that governmental policies implemented through legislation or regulations developed through presumptively reasoned democratic processes are entitled to a higher degree of deference and should not be enjoined lightly.  If the party with the burden of proof makes a threshold showing that it is likely to prevail on the merits, the district court should then proceed to weigh the other Dataphase factors.

Planned Parenthood Minn., N.D., S.D. v. Rounds, 530 F.3d 724, 731-32 (8th Cir. 2008) (en banc) (citations and footnote omitted).  In this case, because Plaintiffs cannot show a likelihood of success on the merits, the motion for a preliminary injunction is denied, and the Court need not reach the other Dataphase factors.

## 2. Likelihood of Success on the Merits

### a. Legal Standard for Res Judicata

Defendants argue that the Minnesota Supreme Court's adjudication of Plaintiffs' constitutional claims and interpretation of Minnesota law in Clark I and Clark II is res judicata between the parties for the purposes of this case.

Under the doctrine of res judicata, a party is barred from bringing "repetitive suits involving the same cause of action." Lundquist v. Rice Mem'l Hosp., 238 F.3d 975, 977 (8th Cir. 2001) (citation omitted). "Final judgment on the merits of an action precludes the same parties from relitigating issues that were or could have been raised in that action." Id. (citation omitted). This Court applies Minnesota res judicata law to determine the preclusive effect of a Minnesota decision. See, e.g., Hicks v. O'Meara, 31 F.3d 744, 746 (8th Cir. 1994) ("We give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.") (citation omitted).

Under Minnesota law,

> [r]es judicata precludes parties from raising subsequent claims in a second action when: (1) the earlier claim involved the same set of factual circumstances; (2) the earlier claim involved the same parties or their privities; (3) there was a final judgment on the merits; (4) the estopped party had a full and fair opportunity to litigate the matter.

12

> Res judicata applies equally to claims actually litigated and to claims that could have been litigated in the earlier action.

Brown-Wilbert, Inc. v. Copeland Buhl & Co., P.L.L.P., 732 N.W.2d 209, 220 (Minn. 2007) (citations omitted).

### b. Same Set of Factual Circumstances

Clark II involved an identical cause of action. The petitioners addressed the identical factual scenario – their desire to run for and vote for the seat of Chief Justice of the Minnesota Supreme Court in light of the cancellation of the 2010 election for the Chief Justice seat based on Chief Justice Magnuson's resignation and the Governor's stated intention to fill that vacancy with an appointment. In Clark II, the petitioners asserted that the First Amendment of the U.S. Constitution requires the state to hold an election in 2010 for the office of Chief Justice, and the Minnesota Supreme Court directly addressed and rejected that argument. See Clark II, 2010 WL 1904554, at *9. Plaintiffs assert the identical First Amendment claim here.

### c. Same Parties

Clark II involved the same parties as the current case: the same three Plaintiffs here were the petitioners in Clark II. Defendants Ritchie and Pawlenty

were respondents in Clark II.

### d. Judgment on the Merits

As noted above, in Clark II, the Minnesota Supreme Court directly addressed and rejected, on the merits, the petitioners' First Amendment claim.

Plaintiffs argue that res judicata does not apply because there is no final judgment in Clark II, because the time to file a petition for writ of certiorari with the U.S. Supreme Court has not run. This assertion is without merit. This Court applies Minnesota law to determine the preclusive effect of a Minnesota decision. As the Minnesota Supreme Court has recently reiterated, "for res judicata purposes, a judgment becomes final when it is entered in the district court and it remains final, despite a pending appeal, until it is reversed, vacated or otherwise modified." Brown-Wilbert, Inc., 732 N.W.2d at 221. Therefore, under Minnesota law, Clark II is a final judgment.

### e. Full and Fair Opportunity to Litigate in Clark II

Plaintiffs also argue that they were denied an adequate opportunity to litigate their claims in Clark II, because no discovery was allowed. "A party receives a fair opportunity to present the claims allegedly precluded if the party could have brought the claims in a proceeding that would satisfy the

14

minimal procedural requirements of the due process clause." Bechtold v. City of Rosemount, 104 F.3d 1062, 1068 (8th Cir. 1997) (citation omitted).

In Clark II, Plaintiffs were represented by counsel: Jill Clark. Plaintiffs participated in oral argument before the en banc Minnesota Supreme Court. They filed their moving papers, documentary evidence, and a reply. They have the opportunity to petition the U.S. Supreme Court for a writ of certiorari. Plaintiffs, thus, had and exercised a right to counsel, to be heard, and to present evidence on their case.

The fact that the Minnesota Supreme Court denied Plaintiffs the opportunity for discovery is not a bar to the application of res judicata in this case when the Minnesota Supreme Court expressly considered and rejected the request for discovery and the court resolved Plaintiffs' claims in a thorough written opinion, without the need for an evidentiary hearing or trial. See, e.g., Erickson v. Horing, No. 99-1468 JRT/FLN, 2001 WL 1640142, at *10 (D. Minn. Sept. 21, 2001) ("Plaintiffs' allegation that they did not have a full and fair opportunity to litigate the fraud issue in the state court because they were not permitted any discovery does not preclude the Court from finding that an issue was 'litigated' for collateral estoppel purposes.") (gathering cases). See also

Porter v. Shah, – F.3d –, 2010 WL 2160906, at *4 (D.C. Cir. June 1, 2010) (holding res judicata applied although, in previous matter, plaintiff was denied discovery and an evidentiary hearing, because plaintiff did have the opportunity to submit documentary evidence and "[i]f he felt the court abused its discretion in failing to afford him discovery or a hearing, he could have appealed the court's discharge of the show cause order, asserting abuse of discretion"); United States v. Sandoz Pharma. Corp., 894 F.2d 825, 828 (6th Cir. 1990) (rejecting claim that party did not have full and fair opportunity to litigate in state court action because it was denied discovery when the party "failed to identify any undiscovered essential fact relevant to this issue, to show that the denial of its discovery request was unfair, or to show that discovery could have led to a different result in either jurisdiction").

In Clark II, Plaintiffs had a full and fair opportunity to present their case through briefing, submission of documentary evidence, and oral argument. They point to no piece of evidence that, if discovered, would have changed the outcome before the Minnesota Supreme Court, particularly since that court concluded that "the reasons for the timing of Chief Justice Magnuson's resignation are not relevant to our decision" and that "the reasons for a

resignation or retirement are not determinative of whether a vacancy is created for purposes of Section 8." Clark II, 2010 WL 1904554, at *9 n.9. There is no showing that the Minnesota Supreme Court's decision to deny discovery was unfair.

Because all of the criteria for res judicata have been met, it is highly likely that Plaintiffs are barred from reasserting their First Amendment claims in this case.

### f. Matters that Might Have Been Litigated

Plaintiffs' remaining U.S. constitutional arguments, such as arguments regarding Fourteenth Amendment violations, are also likely precluded by the doctrine of res judicata because these issues could have been raised in Clark II in support of Plaintiffs' claim that Article VI, § 8 of the Minnesota Constitution violates the U.S. Constitution. As previously noted, res judicata applies to issues that were or could have been raised in the first action.

Because the Court denies Plaintiffs' request for a preliminary injunction requiring a judicial election for the Chief Justice seat in 2010, the question of the use of any incumbency designation on that ballot for that election does not arise, and the Court does not need to reach the question of the constitutionality of the

17

incumbency designation at this time. Additionally, the claim is likely barred by res judicata because it could have been litigated in Clark II.

### g. Merits

Even if the Court were to reach the merits of Plaintiffs' claims, they are unable to show a likelihood of success on the merits. The Minnesota Supreme Court's interpretation of the Minnesota Constitution and Minnesota statutes, as set forth in Clark I and Clark II, to conclude that no Chief Justice election is warranted in 2010, is binding upon this Court. Johnson v. Fankell, 520 U.S. 911, 916 (1997). This Court's evaluation of whether the failure to hold an election for state office violates the U.S. Constitution "starts-and ends-with a question of state law." Bonas v. Town of North Smithfield, 265 F.3d 69, 75 (1st Cir. 2001). See also Nolles v. State Comm. for Reorganization of Sch. Dist., 524 F.3d 892, 898-99 (8th Cir. 2008).

Because Plaintiffs cannot show a likelihood of success on the merits of their claims, a preliminary injunction is not warranted.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

Plaintiffs' Motion for Preliminary Injunction and/or Writ of Mandamus

[Docket No. 2] is **DENIED**.


Dated: June 21, 2010                             s/ Michael J. Davis
                                                 Michael J. Davis
                                                 Chief Judge
                                                 United States District Court